# Application of the Posse Comitatus Act to Assistance to the United States National Central Bureau

The assistance to the United States National Central Bureau by military agencies that is permitted by the Posse Comitatus Act is not limited to investigations into violations of the Uniform Code of Military Justice. Additional situations under which assistance is permitted is discussed in the memorandum.

July 3, 1989

MEMORANDUM OPINION FOR THE CHIEF
INTERPOL-UNITED STATES NATIONAL CENTRAL BUREAU

This responds to your request that we reconsider our June 5, 1986 opinion to you advising that the Posse Comitatus Act, 18 U.S.C. § 1385, permits U.S. military agencies to cooperate with the United States National Central Bureau ("USNCB") only with respect to investigations into violations of the Uniform Code of Military Justice ("UCMJ") by a member of the armed services. We agree for the reasons described below that reconsideration of our 1986 opinion is warranted.

The USNCB is a component of the Department of Justice created to assist the Attorney General in fulfilling his responsibility to "accept and maintain, on behalf of the United States, membership in the International Criminal Police Organization." 22 U.S.C. § 263a. Generally, the USNCB acts as the representative of the United States in coordinating the international law enforcement work of INTERPOL. *See* 28 C.F.R. § 0.34 (describing the functions of the USNCB). Other federal agencies with law enforcement responsibilities aid the USNCB by detailing personnel to assist with its international law enforcement work.

In 1986, you asked this Office whether the USNCB is barred from accepting assistance from the military intelligence agencies of the United States by Article 3 of the INTERPOL constitution, which prohibits USNCB involvement in matters of a "military ... character."[1] We advised that the INTERPOL constitution permits military intelligence agencies to cooperate with the USNCB in the investigation of common law crimes

---

[1] Interpol Const., *reprinted in* Michael Fooner, *Interpol: Issues in World Crime and International Criminal Justice* app B (1989).

even if they also constitute violations of the UCMJ.[2] We acknowledged, however, that this Office does not have the authority to interpret the INTERPOL constitution in a manner that is binding on other members of INTERPOL.

We then observed that cooperation between the USNCB and United States military intelligence agencies raises a question under the Posse Comitatus Act, which imposes additional restrictions on the military assistance that may be received by the USNCB. The Posse Comitatus Act provides:

> Whoever, except in cases and under circumstances express-ly authorized by the Constitution or Act of Congress, will-fully uses any part of the Army or the Air Force as a posse comitatus or otherwise to execute the laws shall be fined not more than $10,000 or imprisoned not more than two years, or both.

18 U.S.C. § 1385. Our brief discussion of this issue concluded that because federal law expressly authorizes the military to enforce the UCMJ, *see* 10 U.S.C. §§ 801-940, the Posse Comitatus Act does not pro-hibit military personnel from engaging in law enforcement activities nec-essary to enforce the UCMJ. 1986 Opinion at 8. We went on to suggest that military agencies may assist the USNCB only with respect to investi-gations into violations of the UCMJ by a member of the armed services. *Id.* at 9.

You have requested that we reconsider our opinion to the extent that it said that military assistance may only be used in investigations into UCMJ violations. You have provided us with a memorandum prepared by the Office of Special Investigations of the Department of the Air Force which identifies several situations in addition to investigations into alleged violations of the UCMJ in which the Act assertedly does not apply.[3]

We have examined each of the situations described in the Air Force Memorandum. Furthermore, we have examined the regulations promul-gated by the Department of Defense implementing the restrictions imposed by the Posse Comitatus Act on the participation of Department personnel in civilian law enforcement. *See* 32 C.F.R. § 213.10. With one exception, which we consider separately below, the situations described in the Air Force Memorandum are discussed in the Department of

---

[2] Memorandum for Richard C Stiener, Chief, INTERPOL-United States National Central Bureau, from Charles J. Cooper, Assistant Attorney General, Office of Legal Counsel, *Re· Cooperation by the United States Central Bureau with United States Military Agencies* (June 5, 1986) ("1986 Opinion")

[3] Memorandum from Donald A. Cox, Jr , Major, USAF, Staff Judge Advocate, *Re: Cooperation by the United States National Central Bureau with United States Military Agencies* (Aug. 27, 1987) ("Air Force Memorandum")

Defense regulations. We believe that each of the regulatory authorizations of military assistance is permitted by the Posse Comitatus Act.

First, the regulations provide that actions taken for the primary purpose of furthering a military or foreign affairs function of the United States are permitted. 32 C.F.R. § 213.10(a)(2)(i). We agree that the Posse Comitatus Act does not prohibit military involvement in actions that are primarily military or foreign affairs related, even if they have an incidental effect on law enforcement, provided that such actions are not undertaken for the purpose of executing the laws. Second, the regulations permit actions taken pursuant to express statutory authority to assist officials in the execution of the laws. 32 C.F.R. § 213.10(a)(2)(iv).[4] The plain language of the Posse Comitatus Act itself provides that it does not apply "in cases and under circumstances expressly authorized by the Constitution or Act of Congress." Finally, the regulations provide that actions taken by civilian employees of the Department of Defense are not subject to the Posse Comitatus Act. 32 C.F.R. § 213.10(b)(3). This is consistent with the understanding of this Office that Congress did not intend civilian employees to be considered "part of the Army or the Air Force" within the meaning of the Posse Comitatus Act. Therefore, we believe that these Department of Defense regulations are consistent with the Posse Comitatus Act. Of course, if you have further questions regarding the permissibility of certain activities under the Act or regulations, we would be pleased to assist you in such matters.

The remaining issue raised by the Air Force Memorandum that is not addressed by the regulations concerns the extraterritorial application of the Posse Comitatus Act. There is no dispute that the Act does not apply extraterritorially at least where the U.S. military is acting as the government within an occupied territory. *See, e.g., Chandler v. United States,* 171 F.2d 921, 936 (1st Cir. 1948), *cert. denied,* 336 U.S. 918 (1949). It is not settled, however, whether the Act restricts extraterritorial use of the military to execute the law in other contexts.[5] As observed in a report pre-

---

[4] The regulations identify several statutes that allow military assistance in law enforcement, notwithstanding the Posse Comitatus Act We do not know if this list is exhaustive, nor have we reviewed the statutes listed to determine the scope of their exceptions to the Posse Comitatus Act Thus, you should examine the underlying statute, not just the description in the regulations, before relying on one of these statutes

[5] The Air Force Memorandum cited *Chandler v. United States,* 171 F.2d 921, 936 (1st Cir. 1948), *cert denied,* 336 U S. 918 (1949), for the proposition that the Posse Comitatus Act has no extraterritorial application. *Chandler* was the first of three post-World War II cases in which American citizens suspected of treason were arrested in Germany or Japan and brought to the United States for trial. In each instance, the defendant challenged the jurisdiction of the court, contending that the use of the military in the arrest and transportation to the United States violated the Posse Comitatus Act and thus deprived the court of jurisdiction. Each defendant lost. In *Chandler,* the court held:

> [T]his is the type of criminal statute which is properly presumed to have no extraterritorial application in the absence of statutory language indicating a contrary intent Particularly, it would be unwarranted to assume that such a statute was intended to be applicable to occu-
> Continued

197

pared by a House committee considering amendments to the Act in 1982, "it is not possible to definitely conclude whether the Act has extraterritorial application." H.R. Rep. No. 71, 97th Cong., 1st Sess., pt. 2, at 7 (1981), *reprinted in* 1981 U.S.C.C.A.N. 1785, 1789.

Because your request to this Office does not directly raise the full range of issues concerning the extraterritorial effect of the Act, and because resolution of those issues is unnecessary given our conclusion that military assistance to the USNCB is permissible in the instances described by the Department of Defense regulations, we have not considered these issues. We would be glad to do so if the USNCB ever contemplates receiving military assistance for an extraterritorial investigation that is not permitted by any of the exceptions to the restrictions of the Posse Comitatus Act outlined in the regulations.

WILLIAM P. BARR
*Assistant Attorney General*
*Office of Legal Counsel*

---

[5] ( .continued)
pied enemy territory, where the military power is in control and Congress has not set up a civil regime

171 F.2d at 936 (citations omitted). Then, in *Gillars v. United States*, 182 F.2d 962, 973 (D.C. Cir. 1950), the court held that there was no Posse Comitatus Act violation because the military was the only authority in Germany at the time: "The right to arrest being a part of the right to govern, it cannot be doubted that our Army of Occupation was authorized to arrest notwithstanding [the Posse Comitatus Act]." The court expressly declined to consider whether the Act was generally extraterritorial in its scope. *Id.* Finally, the court in *Iva Ikuko Toguri D'Aguino v United States*, 192 F.2d 338, 351 (9th Cir 1951), *cert denied*, 343 U.S. 935 (1952), cited *Chandler* and *Gillars* and rejected Tokyo Rose's argument that her transport from Japan to San Francisco by the military violated the Posse Comitatus Act.

Thus, although none of these courts found a violation of the Posse Comitatus Act despite military involvement in law enforcement overseas, the special conditions of the post-war occupation may limit the precedential authority of these decisions regarding the extraterritorial application of the Act generally. In avoiding a decision regarding the extraterritorial application of the Posse Comitatus Act, for example, the court in *United States v. Yunis*, 681 F. Supp. 891, 893 (D D C. 1988), noted that "[b]oth *Toguri D'Aguino* and *Chandler* involved situations where the United States military has a substantial presence in post-war enemy territory."